**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| RIA THOMASSON, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:24-cv-1478-PX |
| ASCELLON CORPORATION, | * | |
| Defendant. | * | |
| | *** | |

**<u>MEMORANDUM OPINION</u>**

In this discrimination case, Plaintiff Ria Thomasson ("Thomasson") accuses her employer, Ascellon Corporation ("Ascellon") of age and disability discrimination and of creating a hostile work environment. ECF No. 1. Ascellon answered the Complaint and now moves for summary judgment. ECF No. 26. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Ascellon's motion for summary judgment is GRANTED.

**I.      Background**

Ascellon is a government contractor providing professional and information technology services. In May 2008, Thomasson started working for Ascellon as an accounting clerk. ECF No. 29-1 at 7. Ascellon President, Ade Adebesi ("Adebisi"), and CEO, Sheila Scott ("Scott"), hired her. Thomasson was 53 years old at the time. ECF No. 29-1 at 52:8–14.

Around August 2011, Adebisi decided to transfer Thomasson from accounting to the position of Project Administrator on a services contract with the Centers for Medicare and Medicaid Services ("CMS") Psychiatric Hospital Project. ECF No. 29-1 at 54:3–6; ECF No. 26-

1

3 at 96:19–97:22.[1]  Shortly after, Thomasson's direct supervisor on the CMS project was fired, so Thomasson took over her duties.  ECF No. 29-1 at 56:10–12.  Thomasson stayed in that role until the CMS project ended in March of 2020.  *Id.* at 57:11–14.

At best, Thomasson's performance in that role was spotty.  In 2016, after "minimally" meeting expectations, Ascellon put Thomasson on a written "performance monitoring plan" to address the "dereliction of duty" that she "frequently" exhibited.  ECF No. 26-3 at 69.  Given that Thomasson had already received "ample training, mentoring and support" necessary for competent job performance, the monitoring plan had "no time limit;" it would remain in place indefinitely.  *Id.* at 70.[2]

When the CMS project ended, Ascellon had no comparable position for Thomasson, so Ascellon created the position of Senior Office Support Staff for her.  ECF No. 26-3 at 28, 72–74, 103.  In that position, Thomasson performed such general support-staff tasks as ordering equipment and supplies, processing paperwork, and securing new company identifications and readying offices for new employees.  ECF No. 29-1 at 74:16–19, 12; ECF No. 26-3 at 23:11–18.  Ascellon required Thomasson to submit weekly reports to Scott that laid out "all of [her] duties for the week," the tasks Thomasson completed and the ones remaining.  ECF No. 26-3 at 33:16–19.

In October 2019, Thomasson was diagnosed with breast cancer.  ECF No. 29-1 at 143:2–7.  She had surgery and took two weeks off from work.  *Id.* at 143:22–144:3, 148:8–14.  Although Thomasson did not need traditional chemotherapy, she was prescribed a drug that exacerbated her

---

[1] Thomasson characterizes this transfer as a "promotion," ECF No. 29 at 1, however the record reflects that Adebisi transferred Thomasson because she had been "performing poorly" as an accounting clerk.  ECF No. 26-3 at 96:22.  *See also id.* (Thomasson "really could not do accounting.").

[2] Thomasson contends that she received performance-based pay increases between June 2013 and March 2017, but no evidence supports this contention.  ECF No. 29 ¶ 6 (citing "Exhibit B" which includes two Ascellon letters dated 2009 and 2011 and Thomasson's resume at ECF No. 29-1 at 39–41).

arthritis.  *Id.* at 152:10–15.  So when she returned to work, she had difficulty walking.  *Id.* at 149:5–7.  She also suffered from headaches, loss of sleep and suppressed appetite.  *Id.* at 145:16–22.  Thomasson never sought formal accommodation for her conditions.  *Id.* at 146:12–15.  In fact, Thomasson candidly admits that her health challenges did not prevent her from performing any of her usual activities.  *Id*. at 146:7–11.[3]

Thomasson believes, however, that Scott began to treat her differently when she returned from surgery.  She describes that "if I forgot something," or "if I was slow at something, I was always the person who was called out."  ECF No. 29-1 at 163:9–16.  Thomasson also perceived Scott's questions to her confirming whether Thomasson understood certain directions as designed to make her feel "stupid."  *Id.* at 165:3–11.  But Thomasson could provide few details on these interactions.  *Id.*

In March 2020, the COVID pandemic hit Ascellon hard.  The company shuttered its doors for two months and lost business as a result.  ECF No. 29-1 at 66:11–14.  Ascellon, in turn, had to downsize, and so it moved Thomasson from full- to part-time staff support.  ECF No. 26-3 at 71.  Nonetheless, Scott assured Thomasson that if business returned to pre-pandemic levels, Thomasson would be returned to full-time status.  ECF No. 29-1 at 165:21–166:4.  However, for the remainder of Thomasson's tenure with Ascellon, business never quite rebounded.  *Id.* at 166:5–8.

Thomasson was never restored to full time status, and now complains that other, younger, non-disabled employees were hired as full-time project coordinators instead of her.  But Thomasson also admits that these positions required qualifications that she did not have.  For instance, in July and September of 2021, Ascellon hired Alexis Wilson and Anthony Adesina as

---

[3] Again, Thomasson represents in her responsive brief that she had advised Scott about her "fatigue," but the evidence does not support the representation.  *Compare* ECF No. 29 ¶ 11 *with* ECF No. 29-1 at 146:12–16.

project coordinators.  ECF No. 29-1 at 128:16–18, 135:1–17.  Both were substantially younger than Thomasson, but they also had college degrees.  *Id.* at 128:10–12.  Thomasson did not apply for either position because she knew that without a college degree, she did not meet the basic requirements for eligibility.  *Id.* at 132:10–12, 136:14–17.

Thomasson's performance also suffered during this time.  For example, at the end of July 2021, Scott had to remind Thomasson to submit her weekly reports.  ECF No. 26-3 at 81.  A few weeks later, Thomasson failed to secure an employee's identification badge.  ECF No. 26-3 at 76. Thomasson also failed to mail necessary supplies that Scott needed for a remote conference, and as a result, Scott could not set up the Ascellon display on time.  ECF No. 29-1 at 118:4–119:17. Thomasson also ordered printers without proper approval and failed to ready an office for a new employee on time, prompting Adebisi to comment that the "level of hand-holding" Thomasson required was "frustrating," and that her errors "demonstrate[d] a level of incompetence that is embarrassing."  *Id.* at 79, 83–84.

The "last straw" for Adebisi, however, occurred in September 2021.  Thomasson had to mail responses for a non-competitive request for proposal that, if properly sent, would have resulted in Ascellon securing a $1 million contract with the Hawaii State Department of Health. ECF No. 26-3 at 104:18–105:14.  Thomasson put the wrong address on the response package and the Department of Health never received it.  *Id.*  As a result, Ascellon lost the contract.  *Id.*  The loss to Ascellon represented 50% of gross revenue for the coming year.  *Id.* at 105:15–22. Accordingly, Adebisi and Scott fired Thomasson the following month, on October 21, 2021.  ECF No. 26-3 at 91; ECF No. 29-1 at 121:12–14.[4]

---

[4] Once again, Thomasson mis-characterizes this mistake as "minor" and "an isolated typo" with no prior similar mistakes, despite having recently erred in shipping conference materials to Scott.  ECF No. 29 at ¶ 24.

On May 21, 2024, after exhausting administrative remedies, Thomasson filed suit in this Court, alleging discrimination based on her age and disability, (Counts I and IV) and hostile work environment (Counts II and III) in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a) *et seq.*, respectively.  ECF No. 1.  Ascellon answered the Complaint and engaged in discovery.  It now moves for summary judgment.  ECF No. 26.  For the following reasons, summary judgment is granted.

## II.      Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt*, *Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### III.    Analysis

#### A.    Certain Discrimination Claims Are Time Barred

Ascellon first contends that certain of its alleged discriminatory acts fall outside the proper limitations period and are thus time barred. ECF No. 26-2 at 5–6. Ascellon particularly contends that because Thomasson filed her formal discrimination charge on August 12, 2022, she may pursue discrimination claims based on events that occurred up to 300 days before the filing of the charge, or October 16, 2021. *Id.* Thus, says Ascellon, claims based on the July 2020 reduction to part time status or failure to promote in July 2021 and September 2021 are time-barred.

The ADA and ADEA "provide a maximum of 300 days from the occurrence of an alleged discriminatory event for a claimant to file a timely charge." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (ADEA); *see also Walton v. Guidant Sales Corp.*, 417 F. Supp. 2d 719, 722 (D. Md. 2006), *aff'd*, 203 F. App'x 510 (4th Cir. 2006) (ADA) (citing *McCullough v. Branch Banking & Tr. Co.*, 35 F.3d 127, 131 (4th Cir. 1994)). Discrete acts falling outside the 300-day window are time-barred, "but a discriminatory allegation may still constitute relevant background evidence for valid claims." *Evans*, 80 F.3d at 962 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

Any independent discrimination claim based on the 2020 reduction to part-time status or the July and September 2021 failure to promote Thomasson are barred as beyond the 300-day window. Thomasson, for her part does not meaningfully contest this point. Instead, she obliquely argues the time-barred acts are "appropriate for consideration" and notes that a continuing course of conduct may be considered for the hostile work environment claims. ECF No. 29 at 8 (citing

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221–22 (4th Cir. 2016)).  Accordingly, the Court confines its summary judgment analysis to her October 21, 2021, termination as the adverse action.  The other alleged acts of discrimination are considered relevant to the termination and will be treated as part of the hostile work environment claim.

### B.  Discriminatory Discharge (Counts I & IV)

Because Thomasson has adduced no evidence of direct discrimination, the Court applies the well-known burden shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).  To make the prima facie showing under the ADEA, some evidence must reflect that Thomasson (1) was over 40 years old; (2) she suffered an adverse employment action; (3) at a time when she had been meeting employer expectations and (4) she was treated less favorably than younger, similarly situated employees.  *Laber*, 438 F.3d at 430–31.  *See also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–13 (1996).  Similarly, to establish a prima facie case under the ADA, some evidence must show that Thomasson (1) had a recognized disability; (2) suffered an adverse employment action; despite fulfilling her employer's legitimate expectations, and (3) the adverse action gives rise to a reasonable inference of unlawful discrimination.  *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022).

If Thomasson makes the prima facie showing, the burden shifts to Ascellon to offer a legitimate, non-discriminatory reason for the adverse action.  *See Laber*, 438 F.3d at 431; *Cowgill*, 41 F.4th at 379–80.  If Ascellon makes the showing, the burden shifts back to Thomasson to adduce some evidence that the stated reason for the action is a pretext for discrimination.  *Id.*  Thomasson "at all times, retains the ultimate burden of persuading the trier of fact that the employer

7

discriminated in violation of" the law. *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004); *see also Moore v. Mukasey*, 305 F. App'x 111, 115 (4th Cir. 2008).

The parties spill much ink on whether Thomasson has made the prima facie showing. ECF No. 26-2 at 6–13; ECF No. 29 at 9–11. Even assuming she has, no evidence supports that Ascellon's stated reasons for her termination were pretextual. Accordingly, the Court grants summary judgment on this basis alone.

Ascellon's stated reasons for firing Thomasson are that they could no longer afford to keep her after Covid, and especially after she cost the company a $1 million contract. ECF No. 26-3 at 91, 103–04. When viewing the record most favorably to Thomasson, the reasons are well supported. Ascellon fired Thomasson for chronic underperformance during a time when the corporation could no longer afford to keep her. ECF No. 30-1 at 6–7 (Adebisi attesting that Thomasson "was not doing enough to justify" keeping her during the post-Covid economic downturn); ECF No. 26-3 at 104–06 (Adebisi explaining that the "last straw" had been Thomasson's error that cost Ascellon the Hawaii Department of Health project). Indeed, Ascellon had tolerated Thomasson's marginal or substandard performance for years. In 2011, they reassigned her from Accounting to Project Administrator because of her poor performance. ECF No. 29-1 at 54:3–6; ECF No. 26-3 at 96:19–97:22. Next, in 2016 she was placed on an indefinite performance plan. ECF No. 26-3 at 69. And in 2020, after the CMS contract ended and she transferred to the Senior Support Staff position, she was required to submit weekly status reports to ensure she stay on task. ECF No. 26-3 at 33:16–19. Thereafter, Thomasson made several errors between July and September 2021. *Id.* at 76–90. But the last incident cost Ascellon a $1 million contract—or *one half* of Ascellon's Covid-decimated budget. *Id.* at 104:18–105:22. Even Thomasson admitted that the "mistake" was so significant that it "haunted [her] for days." ECF

No. 26-3 at 42:18–22. Accordingly, the record supports that Ascellon terminated Thomasson for legitimate and non-discriminatory reasons.

Importantly, where, as here the stated reasons are well supported and legitimate, it is not this Court's "province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). More to the point, Thomasson adduces no evidence to show that the "stated reasons for terminating her were not the real reasons for her discharge." *Hawkins*, 203 F.3d at 279.

Thomasson does "nothing more than speculate" she had been fired based on discriminatory animus. *Hawkins,* 203 F.3d at 280. As for age discrimination, Adebisi and Scott hired Thomasson at age 53, and Ascellon kept her employed until she was almost 70. She was neither the only employee over age 40, nor was she the oldest employee working there. ECF No. 26-3 at 109–10. That Scott commented once on another employee needing to "do something" with her gray hair, ECF No. 29-1 at 168:4–7, cannot sustain a reasonable inference of age-based discriminatory animus.

Similarly, nothing suggests the decision to terminate Thomasson had anything to do with her cancer diagnosis, or any of the lingering symptoms from her treatment. Thomasson's performance-related issues well preceded her cancer diagnosis and persisted throughout. By contrast, no evidence supports that Adebisi or Scott's attitude "changed" in a way that permits an inference of disability discrimination.

At best, after Thomasson returned from surgery, Scott started to question Thomasson pointedly about her understanding of certain assignments which Thomasson construed as mocking her age. ECF No. 29-1 at 164:14–16. But given Thomasson's extensive track record of poor

9

performance, Scott's questions alone do not allow a reasonable juror to conclude that Scott was motivated by disability or age-related discriminatory animus. Thus, without more, Thomasson cannot show the reasons stated for her termination were pretextual.

Thomasson, in response, contends that Ascellon's stated reasons for firing Thomasson had been so inconsistent to give rise to an inference of pretext. ECF No. 29 at 15. But as Ascellon rightly points out, "a finding of pretext is appropriate 'only where the other evidence of discrimination is sufficiently strong to ensure that the employer is held liable for unlawful discrimination and not merely for inconsistent statements.'" *Lyons v. City of Alexandria*, 35 F.4th 285, 292 (4th Cir. 2022) (quoting *Price v. Thompson*, 380 F.3d 209, 217 n.5 (4th Cir. 2004)). This is because "[e]mployers may have multiple, legitimate reasons for their actions," and the mere existence of more than one reason "do[es] not create the inference of pretext where 'there has been no retraction of any of its reasons . . . nor are any of its reasons inconsistent or conflicting.'" *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir. 2001). But as discussed, no evidence suggests Thomasson's termination had been motivated by discriminatory animus.

Nor could any rational factfinder conclude the stated termination reasons were "inconsistent" or contradictory. As Adebisi testified, Ascellon weathered Thomasson's poor performance during more prosperous times. But post-pandemic, Ascellon could no longer afford Thomasson's mistakes. ECF No. 26-3 at 104–05. This reality became especially acute when Thomasson's erroneous mailing cost the company a $1 million contract. Because no reasonable juror could conclude that Ascellon's reasons for firing her were inconsistent, no inference of pretext arises.

In short, Thomasson has adduced no evidence to rebut Ascellon's legitimate non-discriminatory reasons for firing her. Nor has she generated any evidence to show the reasons

were pretextual.    Thus, summary judgment must be granted in Ascellon's favor on the discrimination claims (Counts I and IV).

### C.  Hostile Work Environment Claim (Counts II & III)

Next, as to the hostile work environment claims, Ascellon argues that no reasonable factfinder could conclude that it created a sufficiently hostile workplace aimed at Thomasson's age or disability.  ECF No. 19-1 at 18.   A hostile work environment claim will proceed only if some evidence shows not only that the plaintiff experienced unwelcome conduct imputable to the employer and "aimed at a protected characteristic," but that the conduct was also "sufficiently severe or pervasive to alter the conditions of employment."  *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001); *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006) (applying to ADEA); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (extending claim to ADA).  *See also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015). The test for severity and pervasiveness is an objective one, considering the totality of the circumstances.  *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).   Conduct is sufficiently severe or pervasive to sustain the claim when it creates a workplace "permeated with discriminatory intimidation, ridicule, and insult."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).   To ascertain whether the claim survives challenge, the Court may consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

When viewing the evidence most favorably to Thomasson, nothing supports an inference that she suffered a workplace permeated with discriminatory animus and ridicule based on either her age or disability.  Although the Complaint alleged that Scott routinely yelled and browbeat her, Thomasson testified under oath very differently.  Thomasson, for example, could recall only two times that Scott raised her voice.  Once was after Thomasson had done "something" wrong, ECF No. 29-1 at 159:14, and another for doing "something" that Scott would have "done differently," *id.* at 160:3–4.  Thomasson could recall no other times during which she was "yelled" at, and no other evidence supports that contention.  Further, to the extent the record reflects either Scott or Adebisi having scrutinized Thomasson's work, the record also amply reflects good reason for such scrutiny.  Nor do those instances support a workplace permeated with discriminatory animus.  Summary judgment is thus granted in Ascellon's favor on the hostile work environment claims (Counts II and III).

## IV.    Conclusion

Because Plaintiff Ria Thomasson has adduced no evidence to support her discrimination or hostile work environment claims, the Court grants Ascellon's motion for summary judgment in its favor.  A separate order follows.


3/11/26                                                              _____/s/_____
Date                                                                 PAULA XINIS
                                                                     United States District Judge